UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.C.; V.B.; Z.M.; GRETTA CARABALLO; REBECCA PATTERSON; and JOHNATHON MERTEN, | Case No.:  21-CV-2070 JLS (BLM) |
| Plaintiffs, | **ORDER DENYING DEFENDANTS CAMP PENDLETON & QUANTICO HOUSING, LLC AND LPC PENDLETON QUANTICO PM LP'S MOTION FOR LEAVE TO FILE COUNTERCLAIM AGAINST PLAINTIFF GRETTA CARABALLO** |
| v. | (ECF No. 54) |
| LINCOLN MILITARY PROPERTY MANAGEMENT LP; LMH HOLDINGS, LLC; CAMP PENDLETON & QUANTICO HOUSING, LLC; LPC PENDLETON QUANTICO HOUSING LLC; RHEEM MANUFACTURING COMPANY; HONEYWELL INTERNATIONAL, INC.; and DOES 1 through 100 | |
| Defendants. | |

1

Presently before the Court is Defendants Camp Pendleton & Quantico Housing, LLC ("CPQH") and LPC Pendleton Quantico PM LP's[1] ("LPCPQ") (collectively, the "Moving Defendants") Motion for Leave to File Counterclaim Against Plaintiff Gretta Caraballo ("Mot.," ECF No. 54). Plaintiff Gretta Caraballo ("Plaintiff" or "Caraballo") filed an Opposition to the Motion ("Opp'n," ECF No. 59), and the Moving Defendants filed a Reply in support of the Motion ("Reply," ECF No. 62). The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 63. Having considered the Parties' arguments and the law, the Court **DENIES** the Moving Defendants' Motion.

## BACKGROUND

Plaintiffs include minor and adult members of three families who are present and former residents of military housing located at Marine Corps Base Camp Pendleton ("Camp Pendleton"). *See* Plaintiffs' First Amended Complaint ("FAC," ECF No. 8) ¶ 1. Plaintiffs allege that elevated hot water temperatures at their respective residences caused E.C., V.B., and Z.M. (collectively, the "Minor Plaintiffs") to sustain severe burn injuries while their parents bathed them in sinks. *Id.* Plaintiffs allege that Defendants CPQH and LMH Holdings, LLC ("LMH") "owned" the rental units at Camp Pendleton where the incidents occurred, and that Defendants LPCPQ and Lincoln Military Property Management, LP ("Lincoln") "managed" the properties. *Id.* ¶¶ 1, 21–25.

Plaintiffs initiated this action against Defendants CPQH, LHM, LPCPQ, and Lincoln (collectively, the "Property Defendants"), as well as Rheem Manufacturing Company and Honeywell International, Inc. (collectively, the "Water Heater Defendants," and, all together, "Defendants"), on December 13, 2021. *See* ECF No. 1. Plaintiffs assert negligence and premises liability claims against the Property Defendants, alleging that they failed to properly set the water temperature at the three residences, properly maintain the

---

[1] Plaintiffs refer to Defendant LPC Pendleton Quantico PM LP as "LPC Pendleton Quantico Housing, LLC" in the First Amended Complaint; however, the Court will refer to this Defendant as "LPC Pendleton Quantico PM LP" for consistency with the instant Motion.

water heaters, and/or ensure various components of the water heaters or piping were installed, which resulted in the claimed injuries. FAC ¶ 25. Plaintiffs V.B., by and through her guardian ad litem, Jeffrey Logan Bradley, and Rebecca Patterson assert products liability, breach of warranty, and negligence claims against the Water Heater Defendants, alleging the water heater and thermostat at their residence were defective and caused the claimed injuries to V.B. FAC ¶¶ 77–96.

On March 28, 2022, Magistrate Judge Barbara L. Major issued a Scheduling Order pursuant to Rule 16. *See* ECF No. 41. The Scheduling Order set a deadline of April 29, 2022, for the Parties to file any motion to join other parties, to amend the pleadings, or to file additional pleadings. *Id.* at 1. About six months after that deadline passed, the Moving Defendants filed the instant Motion on October 25, 2022, requesting the Court's leave to file counterclaims against Plaintiff Caraballo for "breach of lease, express indemnity and equitable indemnity." Memorandum of Points and Authorities in Support of Motion for Leave to File Counterclaim ("Mem.," ECF No. 54-1) at 4.[2]

## LEGAL STANDARD

"The same factors used to assess a request for leave to amend a pleading also apply to assess a request for leave to file a counterclaim." *TGG Mgmt. Co., Inc. v. Petraglia*, No. 19-CV-2007-BAS-KSC, 2021 WL 2206475, at *1 (S.D. Cal. June 1, 2021). Generally, under Federal Rule of Civil Procedure 15, leave to file an amended pleading or counterclaim should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *UDAP Indus., Inc. v. Bushwacker Backpack & Supply Co.*, No. CV 16-27-BU-JCL, 2017 WL 1653260, at *4 (D. Mont. May 2, 2017). "However, where, as here, a motion for leave to amend is filed after entry of a Rule 16 scheduling order, Rule 16's standards control." *TGG Mgmt. Co., Inc.*, 2021 WL 2206475, at *1 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

/ / /

---

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

Under Rule 16, "[t]he scheduling order 'control[s] the subsequent course of the action' unless modified by the court." *Johnson*, 975 F.2d at 608. "[A] court may deny a motion to amend the pleadings where the plaintiff failed to first move to amend the scheduling order." *E-Z Living LLC v. A10 Cap., LLC*, No. 3:21-CV-1270 W (BLM), 2022 WL 2079446, at *1 (S.D. Cal. June 9, 2022) (citing *Johnson*, 975 F.2d at 608–09).

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

"When evaluating whether a party was diligent, the Ninth Circuit has determined that 'the focus of the inquiry is upon the moving party's reasons for modification.'" *Winding v. Allstate Ins. Co.*, No. 2:09-CV-3526 FCD KJN, 2011 WL 836442, at *1 (E.D. Cal. Mar. 3, 2011) (quoting *Johnson*, 975 F.2d at 610). To demonstrate diligence under Rule 16's "good cause" standard, courts in the Ninth Circuit often require the moving party to show the following:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999); *see e.g.*, *Nia v. Bank of Am., N.A.*, No. 21-CV-01799-BAS-BGS, 2023 WL 25719, at *2 (S.D. Cal. Jan. 3, 2023) (applying same three-step framework). "If the party seeking the modification 'was not

4

diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609)). "Only after a showing of good cause under Rule 16(b)(4) has been made will a court apply Rule 15(a)." *TGG Mgmt. Co., Inc.*, 2021 WL 2206475, at *1.

## ANALYSIS

### I.    The Parties' Arguments

The Moving Defendants seek leave to file counterclaims against Plaintiff Caraballo for breach of lease, express indemnity, and equitable indemnity. Mem. at 6–8. The Moving Defendants allege that Caraballo's testimony during a recent deposition "revealed facts supporting violations of certain provisions of her lease agreement." Mem. at 4. Specifically, contend the Moving Defendants, Caraballo testified that she had experienced elevated water temperatures in her residence prior to the incident in which her daughter, Plaintiff E.C., was burned by hot water, and failed to report the elevated water temperature to the Moving Defendants. *Id.*; *see id.* at 6–8 (reprinting relevant testimony). Failure to report this issue "breached a provision of [Caraballo's] lease in which she agreed to immediately notify Defendants in writing of any problem or malfunction at the Caraballo residence" and also "trigger[ed] a separate provision of the lease agreement by which Caraballo is obligated to indemnify and hold harmless the Defendants," according to the Moving Defendants. *Id.*

In opposition, Caraballo argues that the Moving Defendants' Motion should fail for several reasons. First, the Moving Defendants did not move to amend the Scheduling Order before moving for leave to file counterclaims against Caraballo. Opp'n at 11. Second, the Moving Defendants failed to "address Rule 16 or the extent of their diligence in their Motion." *Id.* at 12. Even if they had, argues Caraballo, the Moving Defendants knew of the pertinent facts forming the basis of their counterclaims "at the time they occurred"; they did not arise for the first time during Caraballo's deposition. *Id.* Thus, the Moving Defendants were not diligent in bringing their claims, in Caraballo's view. *Id.* at 12–16. Finally, if the Court were to find that the Moving Defendants satisfy Rule 16's

good cause standard, Caraballo contends that "[t]he factors under Rule 15(a) compel the Court to deny Defendants' Motion." *Id.* at 16.

While the Moving Defendants failed to address Rule 16's good cause standard in the Motion, they argue in their Reply to Caraballo's Opposition that good cause exists to allow the counterclaims because there was no undue delay. *See* Reply at 2. The Moving Defendants argue that a "key fact necessary to pursue" their counterclaims was "whether Mrs. Caraballo had experienced issues with the water heater prior to the incident involving her daughter which she failed to report." *Id.* "[T]his information was first discovered in Mrs. Caraballo's deposition testimony on September 14, 2022," and the Motion was filed shortly thereafter on October 25, 2022, according to the Moving Defendants. *Id.* Finally, the Moving Defendants contend that "Plaintiffs' Opposition fails to sufficiently demonstrate that Defendants' proposed amend[ment] violates Rule 15 . . . as unduly delayed, futile, or made in bad faith." *Id.* at 6.

## II.   Discussion

Here, the Moving Defendants did not move to amend the Scheduling Order's April 29, 2022 deadline to amend or file additional pleadings before seeking leave to file counterclaims against Caraballo. *See generally* Docket. The Moving Defendants have twice joined the other Parties in this action in moving to amend the Scheduling Order, but neither of the joint motions requested changes be made to the deadline to file additional pleadings. *See generally* ECF Nos. 51, 55. Accordingly, the Court **DENIES** the Moving Defendants' Motion. *See E-Z Living LLC*, 2022 WL 2079446, at *1; *Johnson*, 975 F.2d at 608–609 (declining to treat plaintiff's motion to amend complaint as motion to amend scheduling order, and finding "no reason to deviate" from Ninth Circuit precedent holding that courts may deny as untimely a motion filed after a scheduling order deadline where the moving party has not requested a modification of the scheduling order).

Even if the Court were to treat the present Motion as a *de facto* motion to amend the Scheduling Order, the Court is not convinced that good cause exists to amend the deadline to amend or file additional pleadings. The Moving Defendants argue that it was not

possible to file the counterclaims until Plaintiff Caraballo's deposition on September 14, 2022, during which she revealed two previously unknown facts: (1) that she had experienced excessively hot water in her residence prior to E.C.'s injuries, and (2) that she had failed to report the hot water issues to the Moving Defendants.  The record before the Court, however, demonstrates that the Moving Defendants had evidence of these facts long before the April 29, 2022 deadline to amend pleadings.

First, on September 10, 2021, before Plaintiffs initiated this action, Plaintiff's counsel and the Moving Defendants' counsel exchanged certain documents.  Declaration of Jamie M. Ritterbeck in Support of Plaintiff Gretta Caraballo's Opposition to Motion for Leave to File Counterclaim ("Ritterbeck Decl.," ECF No. 59-1) ¶ 2.  Among those documents were Plaintiff E.C.'s medical records.  *Id.*   The medical records contain observations from the attending physician, Dr. Natalie Laub.  ECF No. 59-2 at 1.  Dr. Laub noted that:

> Mother [(Caraballo)] reports they have had a lot of difficulty with water in their house.  She has had someone come look at it.  The water will often become very hot without warning or without changing the water nozzle.  This has happened to her while in the shower and to her 3 year old daughter when the daughter was washing her hands.

*Id.*  Thus, as early as September 10, 2021, the Moving Defendants were in receipt of evidence that Caraballo had experienced elevated water temperatures in her residence prior to E.C.'s injuries.

The Moving Defendants argue the above-quoted language "gives no indication when Mrs. Caraballo experienced these issues and whether they occurred before or after the incident involving her daughter E.C."  Reply at 5.  Therefore, according to the Moving Defendants, the medical records do not show that Caraballo had experienced elevated water temperatures *prior to* E.C.'s injuries.  *Id.* at 4–5.  The Moving Defendants, however, ignore the fact that Dr. Laub's observations are dated December 21, 2020, one day after E.C.'s alleged injuries.  *See* ECF No. 59-2.  The only plausible interpretation of Dr. Laub's report,

therefore, is that Caraballo was referring to incidents that occurred before E.C.'s injuries. Moreover, Dr. Laub also noted that Caraballo "provide[d a] *history* of their water often turning scalding without warning" and recommended that the issue be addressed "as it poses a safety risk for the children in the home." ECF No. 59-2 at 3 (emphasis added). Dr. Laub's observations make clear that Caraballo was referring to past problems with excessively hot water in her residence.

Nevertheless, the Moving Defendants also contend that the medical records have "less evidentiary value" than "confirmation from Mrs. Caraballo herself." Reply at 5. Even if the Moving Defendants' assessment of the relative evidentiary value of E.C.'s medical records is correct, there is no requirement that a pleading's allegations be supported by the best possible evidence. The Federal Rules of Civil Procedure only require that factual contentions "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The Court finds that E.C.'s medical records provided evidentiary support for the Moving Defendants' counterclaims and therefore satisfied Rule 11's standard. The Moving Defendants point to no authority to the contrary. *See generally* Reply.

Second, evidence of the fact that Caraballo did not report the hot water issues before E.C.'s injuries was available to the Moving Defendants prior to the Scheduling Order's deadline. Before Plaintiffs initiated this action, the Moving Defendants were in possession of a Work Order List documenting all service calls to the Caraballo residence. *See* ECF No. 59-9. According to the Work Order List, the only service call to the Caraballo residence pertaining to water temperatures prior to E.C.'s injury was a November 29, 2020, report of "No Hot Water in master bath." ECF No. 59-9 at 2. There are no entries for complaints of excessively hot water. *See generally id.* The Work Order List was provided to Plaintiffs' counsel in the September 10, 2021, exchange, indicating such information was available to the Moving Defendants at, and even before, that time. Ritterbeck Decl. ¶ 18.

Finally, the early availability of the relevant facts is evidenced by a defense raised in the Moving Defendants' Answer to Plaintiffs' Complaint, filed on February 1, 2022. *See* ECF No. 13 at 14.  Specifically, the Moving Defendants' "Fifth Affirmative Defense" for "Failure to Disclose Conditions" alleges that all named Plaintiffs, including Caraballo:

> concealed and/or failed to disclose conditions at and around the various premises at issue at any time prior to the incidents at issue in the Complaint, including but not limited to the presence of significantly elevated or extremely hot water temperatures and/or possible malfunction of the water heaters at the various properties, which was in breach of the lease terms which they entered into with CPQH.

*Id.*  The Moving Defendants fail to explain how this affirmative defense was available to them as early as February 1, 2022, while the counterclaims they now seek to pursue, which involve an apparently identical factual basis, were not.  *See generally* Mot.; Reply.

The Court finds that the "central fact[s]," Reply at 4, required for filing the counterclaims against Caraballo were known to the Moving Defendants prior to the Scheduling Order's April 29, 2022 deadline.  With appropriate diligence, the Moving Defendants could have deduced from E.C.'s medical records and the Work Order List that Caraballo had experienced elevated water temperatures and failed to report them to the Moving Defendants prior to E.C.'s injuries.  The Moving Defendants were also in possession of the Caraballo lease agreement and could have determined that Caraballo's failure to report the issue constituted possible grounds for a counterclaim.  *See* Reply at 4.  The Moving Defendants' contention that it was sanctionable to file the counterclaims prior to "confirm[ing]" the facts at Caraballo's deposition, *see* Reply at 5–6, is unsupported by authority and fails to rebut the conclusion that the relevant facts were available to the Moving Defendants months before the deadline to amend or file additional pleadings.

In light of these findings, the Court cannot say that the Moving Defendants were diligent in seeking leave to file the counterclaims.  As stated above, in assessing diligence, courts often review whether the moving party has satisfied three requirements.  Under the second requirement, the moving party must show that their "noncompliance with a Rule

9

16 deadline occurred or will occur, notwithstanding [their] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference." *Jackson*, 186 F.R.D. at 608. Here, the Moving Defendants have not met their burden, as the basis for the counterclaims was known or available prior to the Rule 16 scheduling conference, which occurred on February 21, 2022. *See* ECF No. 35 at 3; *see also Felarca v. Birgeneau*, No. 11-CV-05719-YGR, 2014 WL 7140262, at *9 (N.D. Cal. Dec. 12, 2014) (finding plaintiffs had failed to show good cause for allowing a late amendment where "plaintiffs offer[ed] no plausible reason why they could not have made the allegations sooner" and the "supposed new information" giving rise to the motion "appear[ed] to have been known or available to plaintiffs before the amendment deadline"); *Mortg. Indus. Sols., Inc. v. Collabera, Inc.*, No. CV11-4008-CAS AGRX, 2013 WL 440644, at *3 (C.D. Cal. Feb. 4, 2013) ("Leave to amend is often denied, where, as here, a plaintiff had knowledge of the relevant facts and theory of the case long before a plaintiff sought leave to amend."). Because the Moving Defendants were not diligent in seeking leave to file the counterclaims, good cause does not exist to modify the Scheduling Order.

The Court has concluded that the Moving Defendants (1) failed to file a motion to amend the Scheduling Order prior to requesting leave to file counterclaims against Caraballo, thus justifying summary denial of their Motion; and (2) even if the instant Motion were treated as a motion to amend the Scheduling Order, justifying consideration of the Motion on the merits, the Moving Defendants have failed to show good cause to amend due to their lack of diligence. Analysis of whether amendment would be proper under Rule 15 is therefore unnecessary. *TGG Mgmt. Co., Inc.*, 2021 WL 2206475, at *1 ("Only after a showing of good cause under Rule 16(b)(4) has been made will a court apply Rule 15(a).").

/ / /

/ / /

/ / /

1

## CONCLUSION

2

3

 In light of the foregoing, the Court **DENIES** the Moving Defendant's Motion for Leave to File Counterclaim Against Plaintiff Gretta Caraballo (ECF No. 54).

4

 **IT IS SO ORDERED.**

5

Dated: February 28, 2023

6

Hon. Janis L. Sammartino
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21-CV-2070 JLS (BLM)